# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LADONNA S. CADE, )
)
       Plaintiff, )
)
       v. ) Case No. CIV-13-325-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

The claimant LaDonna S. Cade requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 18, 1966, and was forty-five years old at the time of the administrative hearing (Tr. 46). She graduated high school and has worked as a fast food cashier, production line worker, and parts inspector (Tr. 27, 144). The claimant alleges that she has been unable to work since July 15, 2010, due to knee problems (Tr. 144).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on July 16, 2010. Her application was denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 24, 2012 (Tr. 23-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found the claimant had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday or sit for about six hours, all with normal breaks (Tr. 26). The ALJ thus

concluded that the claimant could return to her past relevant work as a fast food cashier, production line worker, and parts inspector (Tr. 27).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess the opinion of state reviewing physician, Dr. Kenneth Wainner; (ii) by failing to base his RFC findings on substantial evidence; (iii) by improperly assessing her RFC at step four; and (iv) by improperly determining that there was work she could perform. Because the Court finds that the ALJ *did fail* to properly assess the claimant's impairments, the decision of the Commissioner is reversed and the case remanded for further proceedings.

At step two, the ALJ found that the claimant had the severe impairment of degenerative joint disease of the knees and status post right knee replacement (Tr. 25). Medical records reveal that the claimant had a right knee arthroscopy in 2002, but did not get much pain relief from that (Tr. 223). The claimant's treating physician submitted treatment records for the claimant from 2009 through August 2011 (Tr. 204-220, 263-278). On November 17, 2010, he also completed a Medical Source Statement (MSS) regarding the claimant's physical capabilities. He indicated that the claimant could lift/carry ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, sit less than two hours in an eight-hour workday, and that she must periodically alternate sitting and standing to relieve pain or discomfort, and that she was limited in her lower extremities due to her right knee pain (Tr. 238). He indicated that she could never climb, kneel, crouch, or crawl, and only occasionally balance or stoop, was limited in all areas of manipulative limitations, and should avoid all exposure to

hazards, as well as concentrated exposure to extreme cold or heat, wetness, and fumes (Tr. 239). In 2010, she continued to complain of pain in her right knee, and was evaluated by Marcy Clements, D.O. and diagnosed with advanced degenerative joint disease right knee in a young patient (Tr. 221).

The claimant met with Dr. Seth Nodine, M.D., on August 31, 2010, for a consultative examination. She had knee flexion of 140 degrees (150 degrees was full), weak heel/toe walking on the right, secondary to knee pain, and Dr. Nodine noted that the claimant had audible and palpable crepitus with full flexion of the knee with slight decreased range of motion (Tr. 224, 226, 228). He also noted that she moved freely about the room and up and down the table without limitations, although he noted pain in her right knee with deep palpation and valgus and varus stressing and complete flexion (Tr. 224). He assessed her with right knee ongoing osteoarthritic pain syndrome requiring further intervention, and stated that the claimant would not do well in a prolonged standing position or with physical activity, stating "She states she needs to get up from a seated position and change positions, but should have no other limitations with a non-manual labor type job structure" (Tr. 224).

On October 4, 2010, Dr. Kenneth Wainner reviewed the claimant's record and determined that she could perform light work with no further restrictions (Tr. 231).

The claimant continued to report knee pain to her physicians, and eventually underwent a total knee replacement on April 11, 2011 (Tr. 283). The claimant had regular check-ups with Dr. Clements following her surgery, and on June 23, 2011, Dr. Clements noted that the claimant continued to improve, but still had weakness and

trouble going up and down stairs (Tr. 282). Dr. Clements recommended that the claimant continue physical therapy because she needed to continue strengthening (Tr. 282).

Although the ALJ found in his written opinion that the claimant's degenerative joint disease of the knees and status post right knee replacement was a severe impairment at step two, he failed to include any limitations related to that impairment in the claimant's RFC at step four (Tr. 26-27). The ALJ did not provide any explanation for this apparent inconsistency, *see, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."), opting instead to devote most of his step four discussion rejecting the claimant's credibility with boilerplate language and questioning his determination of severity at step two. The ALJ did state that Dr. Clements' "encouraging and generally positive report undercuts" the treating physician assessment done prior to the total knee replacement. However, he did not explain why he ignored Dr. Clements' statements regarding the claimant's weakness (particularly in relation to a sit/stand option) and difficulty navigating stairs. Instead, he adopted the findings of Dr. Wainner, whose assessment was also conducted prior to the claimant's total knee replacement, and he did not explain how she was capable of performing light work including standing and/or walking up to six hours in an eight-hour workday with no postural limitations,

when Dr. Clements indicated that she continued to have postural limitations even post surgery. Nor did the ALJ analyze any of the medical evidence in accordance with the controlling authorities. *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

Because the ALJ failed to explain how the claimant's severe impairment of degenerative joint disease of the knees became so insignificant as to require no limitations in his RFC at step four, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**